UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF FLORIDA

JOHN  B. MACNEILL,

                Plaintiff,

–vs–

_____          Case No. 6:09–cv–706–ORL–31DAB

AMY B. JACKSON

 (SUCCESSOR BY NAME CHANGE TO AMY B. VAN FOSSEN)

                Defendant

JAMES A. YATES,

                Defendant,

JAMES A. YATES,

                Counter Claimant,

–vs–

_____

JOHN B. MACNEILL,

                Counter Defendant.

_____

SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND

INJUNCTIVE RELIEF

I. JURISDICTION

1. Plaintiff John B. MacNeill (hereinafter "Plaintiff" or "MacNeill" or "Plaintiff

MacNeill"), brings this action seeking a declaration of rights with respect to federal copyright laws, and injunctive relief and other relief under the laws of the State of Florida. The court has jurisdiction over this action under 28 U.S.C. § 1331 (Federal question) and §1338 (17 U.S.C. COPYRIGHTS), §1367 (Supplemental jurisdiction), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

2. Plaintiff, on knowledge, information, and belief, asserts Defendant James A. Yates (hereinafter "Yates" or "Defendant Yates"), and Defendant Amy B. Jackson, (hereinafter "Amy B. Jackson" or "Amy B. Jackson, Esq."), successor by name change to Amy B. Van Fossen, have sufficient contacts with this District generally and, in particular, with the events herein alleged, that each Defendant is subject to the exercise of jurisdiction of this court over its person.

## II. VENUE

3. Plaintiff, on knowledge, information, and belief, asserts venue is proper in this District, under 28 U.S.C. § 1391( (b), for Defendant Yates, who did reside at all times material to this complaint, at <u>464 Port Royal Blvd., Satellite Beach, Florida 32937</u>, and for Defendant Amy B. Jackson (successor by name change to Amy B. Van Fossen), who has a law office <u>Amy B. Jackson, P.A. 476 Highway</u>

A1A, Satellite Beach, Florida 32940, in this District where a substantial part of the events or omissions giving rise to this claim occurred.

## III. FACTUAL ALLEGATIONS RELATED TO ALL COUNTS

4.  In 1987, Plaintiff MacNeill co authored with Robert J. Herring,  a Disk Operating System (hereinafter "DOS"), computer program, called  "Permit Tracker," expressing a system and procedure for storing, and reporting, information about acquiring and maintaining permits, permit status, permit events, permit reminders, associated personnel, other related permits, and for entry of comments or action items.

5.  The copyright registration for the 1987 Permit Tracker version is TX 2–281–638.

6.  A Statement of Transfer of Copyright for the 1987 Permit Tracker version, from Robert J. Herring to John B. MacNeill, is recorded with the U.S. Copyright Office.  [Registrar of Copyrights Document No. V3561D634]

7.  In 1996, Walter A. Bowles, Jr., and Plaintiff MacNeill developed an improved Windows version of the Permit Tracker, rewritten from the DOS 1987 Permit Tracker version, using Visual dBase development language.

8. The copyright registration for the 1996 Permit Tracker Windows version is TX 6–888–851.

9. A Statement of Transfer of Copyright for the 1996 Permit Tracker Windows version was executed by Walter A. Bowles, Jr., on October 29, 2008, transferring all of his worldwide copyright to John B. MacNeill.

10. In September, 2004, Plaintiff MacNeill and Defendant Yates agreed to work together in a joint venture to develop a new improved version of Permit Tracker from the 1996 Permit Tracker Windows version. (Hereinafter "Joint Venture") The improved Permit Tracker was to be rewritten from the predecessor 1996 Permit Tracker Windows version, with MacNeill and Yates, each contributing in a joint and cooperative effort. ("Hereinafter "Joint Venture Agreement")

11. As compensation for their Joint Venture, MacNeill and Yates decided on a 50/50 split of profits or losses, expected or incurred, from the new improved Permit Tracker.

12. MacNeill specified, with Yates agreement, the new improved Permit Tracker was to be written in a newer and current programming language.  The new programming language was intended to provide the new Permit Tracker version with a more modern appearance and enhanced market appeal, and with the

capability for adding new features, for example, a facility for data input from personal data assistants and for email notifications.

13. Yates started working on the new improved Permit Tracker, by copying the 1996 Permit Tracker data base structure and by evaluating current windows software development programs for best suitability to rewriting the 1996 Permit Tracker Windows version.

14. From about October, 2004 to June 2006, the rewriting of the 1996 Permit Tracker Windows version continued.  MacNeill and Yates chose the C#.NET development program as best suitable for their new improved Permit Tracker version.  MacNeill and Yates continued their joint and collaborative, efforts and contributions.

 15. MacNeill's contributions to the new improved Permit Tracker, being written in the C#.NET programming language, were,

a. a license to copy and prepare a derivative work, of 1996 Permit Tracker Windows version.

b. proprietary knowhow of the Permit Tracker market and,

c. changes made to the 1996 Permit Tracker Windows version, in adapting it to current market conditions.

16. Yates' contributions were his knowledge and skill in programming, and

ability in learning the C#.NET programming language, for use in,

a. copying the 1996 Permit Tracker Windows version, in the C#.NET

programming language and

b. programming  the  MacNeill and Yates, modifications and additions, in the

C#.NET programming language.

17.  From the start of their Joint Venture Agreement and Joint Venture, in

September 2004, MacNeill and Yates worked together, each placing their

confidence and trust in the other, to their joint and mutual advantage, for the

production of the C#.NET Permit Tracker computer program, as an integrated

unit jointly owned by MacNeill and Yates (hereinafter "C#.NET Permit Tracker"),

(hereinafter "Joint Work"), with MacNeill and Yates, each jointly entitled to all

rights, titles, and interests to the Joint Work, in all its intangible and tangible

embodiments and each sharing 50/50 in profits and losses.

18. In June 2006, Yates said the C#.NET Permit Tracker was sufficiently

developed to show it at the 2006 Environmental Permitting School at the

Marriot Marco Island Resort, an important tradeshow for marketing of the

Permit Tracker product.   However, later, after MacNeill registered as an

exhibitor with 2006 <u>Environmental Permitting School</u>, Yates objected, saying

the C#.NET Permit Tracker wasn't ready and to wait until it was further

developed.

19. From June 2006 to March 2007, MacNeill and Yates continued to work

together on the C#.NET Permit Tracker.  MacNeill worked to add more "queries

and reports," to the existing Permit Tracker Query and Report feature, using the

"Crystal Reports" development program.  Yates continued in the work of adding

security programs to prevent unauthorized users from accessing or using a

proprietary Permit Tracker copy.

 20. About March 20th 2007, MacNeill and Yates discussed moving their joint

venture agreement under the formal structure of a 50/50 corporation or

partnership, later deciding on the formal structure of a limited liability

company.

21.  Ms. Amy B. Jackson, Esq.  (successor by name change to Amy B. Van

Fossen, Esq.)  was hired by MacNeill on April 2nd, 2007, to prepare the limited

liability company articles and operating agreement.

22. Yates made an initial proposal for, and later made revisions to, the limited

liability company operating agreement, each including the 50/50 split of profits

expected, or losses incurred, as originally agreed. The "Yates marked up and modified, version" of the operating agreement, sent to MacNeill April 16, 2007, included the original 50/50 profit split.

23. Amy B. Jackson (successor by name change to Amy B. Van Fossen), filed the Encoded Solutions, L.L.C. Articles of Organization, April 30th, 2007, naming MacNeill and Yates, as Managing Members. The Articles were filed without an operating agreement.

24. On or about May 1st, 2007, after several revisions to the operating agreement, Yates called MacNeill and demanded the operating agreement allocate 51% of the ownership to, and profits from, the C#.NET Permit Tracker, to Yates.  To give force and persuasion to his demand for 51% ownership and 51% share in the profits, Yates said to MacNeill,

> "Not one more line of code will be written until you sign this
> agreement [the Operating Agreement with ownership divided 51%
> Yates, 49% MacNeill], " and
>
>  "Don't worry. I will work toward both of our best interests."

25.  Another Yates' justification or inducement, for signing the Operating Agreement giving 51% to Yates, was,

a practical need to have control in one person, to avoid

deadlocks and possible destruction of the company.

This Yates' justification was offered with Yates' statement,

"Don't worry. I will work toward both of our best interests."

26. About May 27th, 2007, MacNeill received a fourth rendition  to the

Operating Agreement, sent by Yates and revising the 50/50 split in

profits to 51% for Yates.

27. From May 1st 2007 to June 8th 2007, MacNeill and Yates continued to work

together on completion of the C#.NET Permit Tracker, as they had previously.

MacNeill continued testing and writing additional queries and reports, for the

Queries and Reports feature, using the Crystal Report development program.

Yates continued his work on the security and distribution, programming.

28. On June 8th, 2007, MacNeill and Yates placed their joint venture in a written

Operating Agreement, with 51% percent ownership given to Yates, as he had

demanded, on or about May 1st, 2007.

29. Between June 2007 and March 2008, MacNeill and Yates continued to work

together, as they had previously.  During that time period, in about August

2007, MacNeill and Yates started marketing the C#.NET Permit Tracker,

receiving favorable results and responses.

30. On, or about March 28th, 2008, MacNeill received <u>Minutes of Special</u>

<u>Meeting of Share Holders of Encoded Solutions, LLC</u>, signed by James A. Yates,

March 27th, 2008.  The Minutes resolved, *inter alia*,

     a. Yates is the fifty one (51%) percent member and shall have the ability

to manage the LLC,

     b. MacNeill is removed as Treasurer,

     c. MacNeill breached the Encoded Solutions, LLC Operating Agreement,

Section 4.3 Non-Capital Contributions and 6.1 Duties of Members,

     d. MacNeill has caused damage to Yates and that MacNeill is removed as

a member of the LLC,

     d. in lieu of legal action against MacNeill, on account of his [MacNeill's]

breach and damage to Yates, an offer is to be made to MacNeill to distribute

the LLC assets in accordance with an attached contract, ("Contract").

31. The Contract was an offer to settle alleged damages to Yates, proximately

caused by MacNeill's alleged breach.  The settlement terms required MacNeill

release all of MacNeill's ownership rights in the C#.NET Permit Tracker, in lieu

of Yates proceeding against MacNeill in a legal action.

32. By letter dated March 31st 2008, MacNeill rejected the Yates "Contract,"

offer and at the same time,  asserted his own intangible rights in the C#.NET

Permit Tracker and in the tangible C#.NET Permit Tracker source code.

33. Yates' assertion that MacNeill breached the Operating Agreement was

without grounds, false and baseless.  The alleged facts of the asserted breach

was provided in a letter May 14th, 2008, from Yates' attorney as,

> "Mr. MacNeill clearly failed to fulfill his non-capital contribution
>
> obligations. At no time did Mr. MacNeill have unencumbered
>
> possession or control over a U.S. Trademark for 'Permit Tracker'."

By June 10th 2008, it was clea, Yates had no intention of prosecuting his false

and baseless claim.

34. Yates was faced with,

a. MacNeill's rejection of the Yates' false and baseless allegations of breach

and,

b. MacNeill's assertion of his joint rights in, and demand for his intangible and tangible rights in the C#.NET Permit Tracker and in the C#.NET Permit Tracker source code.

35. Unable to use the false, baseless, and rejected, claim of breach as a pretext for taking MacNeill's rights, titles and interests in the C#.NET Permit Tracker, Yates, instead, chose to use dissolution of the alleged Encoded Solutions, L.L.C, as the next preferred method for taking exclusive dominion and control over, and for excluding MacNeill from, his joint rights, titles and interests, in the C#.NET Permit Tracker.

36. Yates used the dissolution of the Encoded Solutions L.L.C., to take exclusive possession, control, dominion, and custody, of the jointly owned C#.NET Permit Tracker source code, and with it, exclusive dominion, possession and control of all of the tangible and intangible, rights, titles, and interests, in the C#.NET Permit Tracker.

37. Yates' act, by taking exclusive dominion, possession and control, of the C#.NET Permit Tracker, evicted MacNeill from, and dispossessed, and deprived MacNeill of, his joint rights, titles, and interests in the C#.NET Permit Tracker, and was without right, was intentional and was, wrongful.

38. By letter dated July 11th 2008, and in several letters thereafter, MacNeill

demanded  Yates restore MacNeill's rights, titles, and interests in the jointly

owned  C#.NET Permit Tracker, by an immediate transfer to MacNeill of a full

and complete copy of the C#.NET Permit Tracker source and operating code, in

the best edition comprising all error corrections, improvements made in its

operation, and additions of new functions and operations, with encryption

removed, or encryption keys, provided for full operation, distribution and

registration.

39. Yates refused MacNeill's July 11th letter demand, retaining in his exclusive

possession, dominion and control, the C#.NET Permit Tracker, and ousting

MacNeill from his joint ownership rights, titles, and interests, in the C#.NET

Permit Tracker, under 17 United States Code – COPYRIGHTS, and under Florida

State law.

40. As a consequence, Yates now holds exclusive custody, dominion and

control, of and over, the C#.NET Permit Tracker, adversely to the interests of

MacNeill and has proximately caused injury and damage to MacNeill.  As a

result, an actual case and controversy exists, which is ripe for adjudication.

## COUNT I – DECLARATORY RELIEF

41. Plaintiff MacNeill repeats and incorporates each allegation in Paragraphs 1 to 40, the same as if set forth herein in their entirety.

42. MacNeill has suffered injury proximately caused by Defendant Yates' adverse holding of, and exclusive dominion over, the C#.NET Permit Tracker, thereby dispossessing and ousting MacNeill, from his rights, titles, and interests, in the C#.NET Permit Tracker.

43. Plaintiff MacNeill requests this Court determine and adjudge,

a. MacNeill and Yates formed, and worked together in a joint venture to develop and market the C#.NET Permit Tracker;

b. the C#.NET Permit Tracker is a joint work of, and all of the rights, titles, and interests, to the C#.NET Permit Tracker and to its source code, under Title 17 *United States Code* – Copyrights, and under the laws of the State of Florida,  are jointly owned by, MacNeill and Yates; and

c. MacNeill and Yates are jointly entitled, as joint owners, to all of the rights, titles, and interests, in, or to, the C#.NET Permit Tracker.


WHEREFORE: Plaintiff MacNeill, requests this Court,

Declare Plaintiff MacNeill is the joint owner of  all of the rights, titles, and

interests, in the tangible and intangible, property of the C#.NET Permit Tracker

and order all other relief as the Court may find necessary or desirable to place

MacNeill in full possession, control, and dominion, of a complete copy of the

C#.NET Permit Tracker source and operating code in all editions made on

and/or after, February 2008, comprising all error corrections, improvements

made in its operation, and additions of new functions and operations, with

encryption removed, or encryption keys provided for full operation, distribution

and registration.


COUNT II – CONVERSION

44.  Plaintiff MacNeill repeats and incorporates each allegation in Paragraphs 1

to 40, the same as if set forth herein in their entirety.

45. Defendant Yates has obtained, and has kept the C#.NET Permit Tracker in

his sole dominion, control, and possession and has refused Plaintiff MacNeill's

repeated requests and demands, as joint owner, for joint possession of the

C#.NET Permit Tracker, including, without limitation, a tangible operating copy

of the Joint C#.NET Permit Tracker source code.

46. Yates' asserted right of dominion over the C#.NET Permit Tracker, by his

sole control and possession of the C#.NET Permit Tracker source code, was

inconsistent with, and adverse to, the rights, titles, and interests, of MacNeill,

as joint owner of the C#.NET Permit Tracker and deprived MacNeill of, and

interfered with, MacNeill's legal rights in the C#.NET Permit Tracker.

47. Defendant Yates' repeated refusals, to surrender to MacNeill, a copy of the

C#.NET Permit Tracker source code, after MacNeill's repeated demands

therefore, made on several separate occasions,  is an act of conversion of

MacNeill's legal right, as a joint owner of, and to, all of the rights, titles and

interests , in or to, the C#.NET Permit Tracker.

WHEREFORE: Plaintiff MacNeill, requests this Court, Order Defendant Yates

immediately transfer to Plaintiff MacNeill, a full and complete copy of the

C#.NET Permit Tracker source and operating code in all and any editions made

on and/or after February 2008, comprising all error corrections, improvements

made in its operation, and additions of new functions and operations, with

encryption removed, and/or encryption keys provided for full operation,

distribution and registration.


## COUNT III – CIVIL THEFT

48. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40, the

same as if set forth herein in their entirety.


49. Defendant Yates has obtained, and has kept the C#.NET Permit Tracker

under his sole dominion, in his sole control and possession and has refused

Plaintiff MacNeill's repeated requests and demands, as joint owner, for a

tangible operating copy of the Joint C#.NET Permit Tracker source code.


50. Defendant Yates' repeated refusals to surrender to MacNeill, a copy of the

C#.NET Permit Tracker source code, is an ouster and dispossession of MacNeill

from his rights as joint owner of the C#.NET Permit Tracker.


51. Defendant Yates, ouster and dispossession, of MacNeill from his rights as

joint owner of the C#.NET Permit Tracker, was with knowledge, or with reckless

disregard of the truth, of MacNeill's joint ownership in the C#.NET Permit

Tracker.

52. Yates obtained and is using the C#.NET Permit Tracker, with intent to,

either temporarily or permanently:

(a)  Deprive MacNeill of his right to, or a benefit from, his joint ownership in the

C#.NET Permit Tracker, and

(b)  Appropriate from MacNeill, his joint ownership in the C#.NET Permit

Tracker , to Yates' own and exclusive use.

53.  MacNeill notified Yates that Yates' adverse holding was wrongful, without

authority, a theft, and a conversion, of MacNeill's joint property interest in

C#.NET Permit Tracker, making written demand, under Fla. Stat. (2008) §

772.11 Civil remedy for theft or exploitation, for the treble damage amount of

Mr. Yates liability and the liability of any other party who conspired with, or

aided, or assisted,  Yates.

WHEREFORE: Plaintiff MacNeill, requests this Court, order Defendant Yates to

pay to MacNeill the treble damage amount of all liability for compensatory,

consequential, and punitive damages, and for the liability of any other party who conspired with, or aided, or assisted, Yates.

## COUNT IV – CONSTRUCTIVE TRUST

54.  Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40, the same as if set forth herein in their entirety.

55.  MacNeill and Yates had agreed to work together in a joint relationship of mutual confidence and trust, each relying on the other to work in a cooperative and mutually beneficial way, to complete the C#.NET Permit Tracker, to hold the C#.NET Permit Tracker rights, titles, and interests, and the tangible C#.NET Permit Tracker source code, in trust for each other, to protect the copyright in the C#.NET Permit Tracker, to keep confidential all trade secrets imparted to each other in connection with the system, procedures, structure, authorship, and marketing, of the C#.NET Permit Tracker and to work, in a mutual relationship of trust and confidence to market the C#.NET Permit Tracker, for their joint profit.

56. Defendant Yates acted wrongfully when he violated this relationship of trust and confidence, through his exercise of exclusive dominion over the C#.NET Permit Tracker, by his adverse holding, and ouster of MacNeill, of, and from, MacNeill's joint ownership of the C#.NET Permit Tracker, by denying to MacNeill the tangible C#.NET Permit Tracker source code, and by appropriating for his profit the C#.NET Permit Tracker, exclusive of, and in derogation of, MacNeill's rights, titles, and interests.

57.  A constructive trust exists for the C#.NET Permit Tracker, where Yates, through his abuse of the trust and confidence reposed in, and accepted by Yates, Yates, without right, did wrongfully take exclusive dominion over the C#.NET Permit Tracker, by dispossessing, evicting, and excluding MacNeill, from MacNeill's joint ownership rights in the C#.NET Permit Tracker.


WHEREFORE Plaintiff MacNeill requests this Court order,

1. A constructive trust of the C#.NET Permit Tracker property.

2. Restore to MacNeill's possession, custody and control, a full and complete copy of the C#.NET Permit Tracker source and operating code in all and any editions made on and/or after February 2008, comprising all error corrections,

improvements made in its operation, and additions of new functions and/or

operations, with encryption removed, and/or encryption keys provided for full

operation, distribution and registration.

3. Order Defendant Yates to account for all gains, profits, and advantages,

derived from, and all damage to, the C#.NET Permit Tracker.


## COUNT V – BREACH OF FIDUCIARY DUTY

58. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40, the

same as if set forth herein in their entirety.

59. MacNeill and Yates, as joint venturers, had a fiduciary duty, each to the

other, of the finest and highest loyalty, the same as under the Florida Law of

Partnerships.

60. As a fiduciary to MacNeill, Yates held the C#.NET Permit Tracker property,

and its tangible source code embodiment, in trust for MacNeill.

61.  That fiduciary duty, from the start of their joint venture in September,

2004, continued through Yates wrongful acts to obtain exclusive dominion,

possession, custody, and control, of the C#.NET Permit Tracker source code.

62. In March 2008, Yates wrongfully violated his fiduciary duty to MacNeill by his false, baseless, and later abandoned attempt to hold MacNeill in breach of an alleged Encoded Solutions, L.L.C. Operating Agreement and by wrongfully seizing, and exercising exclusive dominion over, the C#.NET Permit Tracker, without right, adversely to MacNeill's joint ownership rights, and in violation of Yates' obligation as fiduciary entrusted with the C#.NET Permit Tracker tangible and intangible property for the joint ownership of MacNeill and Yates.

 63. In June 2008, Yates violated his fiduciary duty to MacNeill, by  dissolving the alleged Encoded Solutions, L.L.C. for the purpose of taking of the C#.NET Permit Tracker and withholding from MacNeill, the C#.NET Permit Tracker source code, in reckless disregard of the truth of MacNeill's joint ownership, in derogation of MacNeill's, rights, titles, and interests, in the C#.NET Permit Tracker, and in violation of Yates' obligation as fiduciary entrusted with the C#.NET Permit Tracker tangible and intangible property for the joint ownership of MacNeill and Yates.

64. The breach by Yates, of his fiduciary duty to MacNeill, was the proximate cause of MacNeill's damages.

WHEREFORE, Plaintiff MacNeill requests the Court,

1.  Create a constructive trust for the C#.NET Permit Tracker and transfer to MacNeill's possession, custody and control, a full and complete copy of the C#.NET Permit Tracker source and operating code in all and any editions made on and/or after February 2008, comprising all error corrections, improvements made in its operation, and additions of new functions and/or operations, with encryption removed, and/or encryption keys provided for full operation, distribution and registration.

2. Order Defendant Yates to account for all gains, profits, and advantages, derived from, and all damage to, the C#.NET Permit Tracker.

3. Order Defendant Yates to pay to MacNeill compensatory, consequential, and punitive, damages for injuries, caused by Yates' fraud and other wrongful conduct.

4. Order Defendant Yates to pay to plaintiff the costs of this action and reasonable attorney's fees are allowed to plaintiff MacNeill.

## COUNT VI – FRAUD IN THE INDUCEMENT

65. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40, the same as if set forth herein in their entirety.

66. MacNeill and Yates had an oral joint venture agreement, which they planned to transfer into the formal structure of a limited liability company, operating agreement.

67. Consistent with their original 50/50 profit split agreement, in April 2006, Yates proposed, or reviewed  without change, draft operating agreements with the 50/50 provision.

68. Then, on May 1st 2007, Yates, in a telephone conversation, said  to MacNeill,

> "Not one more line of code will be written until you sign this agreement  [the revised Operating Agreement with ownership divided 51% Yates, 49% MacNeill]."
>
>  "Don't worry. I will work toward both of our best interests."

69. Yates asserted as an additional justification for his 51% ownership, the practical need for Yates to have control, to avoid a deadlock and possible destruction, of the company.

70.  From May 1st 2007 to June 8th, 2007, nothing more was said by Yates and

MacNeill and Yates continued to work, as they had previously, in the completion

of the C#.NET Permit Tracker.

71. Relying on Yates' statements (see Paragraph 68), as truthful, in June 2007,

MacNeill and gave Yates 51% percent ownership in the alleged L.L.C. property.

72. Yates' statements,

      a. "Don't worry. I will work toward both of our best interests," and

      b. of the necessity that Yates have a 51% controlling interest to

      avoid a deadlock and possible destruction of the company,

each by itself, was a false statement of a specific and material fact

describing Yates'  then present state of mind and intent to act according

to his statement, and  was made by Yates with knowledge of its falsity, or

made by Yates knowing he was without knowledge of its truth or falsity.

73.  Yates' false statements were made to induce MacNeill to act in

reliance on Yates' false statements, and MacNeill did act on Yates' false

statements, to MacNeill's detriment by giving to Yates a 51% ownership,

and control, of the C#.NET Permit Tracker.

74.  As a consequence of Yates' false statements and of MacNeill's

detrimental reliance on one or more of Yates' false statements, Yates

obtained 51% control of the C#.NET Permit Tracker and Yates used that

51% control to oust, evict, and take from MacNeill, his rights, titles, and

interests, as joint owner in the C#.NET Permit Tracker, causing injury to

MacNeill, by Yates' breach of fiduciary duty to MacNeill, by Yates'

conversion, and by Yates civil theft, of MacNeill's joint rights, titles, and

interests, in the C#.NET Permit Tracker.


WHEREFORE: Plaintiff MacNeill, requests this Court

1. Order the Operating Agreement for the alleged Encoded Solutions, L.L.C. is

voided from its inception [*ab initio*]

2. Create a constructive trust for the C#.NET Permit Tracker and restore to

MacNeill's possession, custody and control, a full and complete copy of the

C#.NET Permit Tracker source and operating code in all and any editions made

on and/or after February 2008, comprising all error corrections, improvements

made in its operation, and additions of new functions and/or operations, with

encryption removed, and/or encryption keys provided for full operation,

distribution and registration.

3. Order Defendant Yates to account for all gains, profits, and advantages,

derived from, and all damage to, the C#.NET Permit Tracker.

4. Order Defendant Yates to pay to MacNeill compensatory, consequential, and

punitive, damages for injuries, caused by Yates' fraud and other wrongful

conduct.

5. Order Defendant Yates to pay to plaintiff the costs of this action and

reasonable attorney's fees are allowed to plaintiff MacNeill.

## COUNT VII – BREACH OF CONTRACT

75. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40, the

same as if set forth herein in their entirety.

76. MacNeill and Yates engaged in a joint venture agreement. Their agreement

was to work together in a mutual effort of confidence and trust for their joint

profit.  Their object and purpose was to rewrite the MacNeill 1996 Permit

Tracker windows version, in a new version in the C#.NET programming

language  and to market the new version for the purpose of their joint profit.

77. MacNeill and Yates worked together from September 2004,  in their joint

development of the new improved Permit Tracker and by 2007, MacNeill and

Yates had completed a new improved C#.NET Permit Tracker version of the

1996 Permit Tracker windows version, which was then ready for consumer field

testing (Hereinafter "Beta Testing").

78. Yates breached their joint venture agreement, on or about March 28th,

2008, when Yates,

a.  made an unsubstantiated false and baseless claim MacNeill breached

the alleged Encoded Solutions, L.L.C. Operating Agreement, removed

MacNeill as a member of, and participation in, the alleged Encoded

Solutions, L.L.C., and threatened a baseless and later abandoned, breach

of contract legal action against MacNeill,

b.  attempted to obtain the exclusive ownership of the C#.NET Permit

Tracker, from MacNeill by a  false and baseless threat of  legal action

and thereby convince  MacNeill to release all of MacNeill's joint

ownership rights in the C#.NET Permit Tracker,

c. attempted to place the C#.NET Permit Tracker under Yates exclusive

possession, dominion, and control, and evict MacNeill from his right of

joint ownership in the C#.NET Permit Tracker, and

d. by word, action, and deed, refused to perform their Joint Venture

agreement, to continue to work together in a mutual relationship of trust

and confidence in the further development and in the marketing of the

C#.NET Permit Tracker, for the purpose of their joint profit.

79. Yates confirmed his breach of the joint venture agreement, on, or about

June 20th, 2008, when Yates, acting as 51% majority member,

a. dissolved the alleged Encoded Solutions, L.L.C,

b. rejected MacNeill's demands for a copy of the C#.NET Permit Tracker source

code, and

c, denied to MacNeill, any use or benefit of their joint venture C#.NET Permit

Tracker property.


WHEREFORE, Plaintiff MacNeill requests the Court,

1. Order Defendant Yates breached the MacNeill Yates Joint Venture.

2. Restore to Plaintiff MacNeill all of the benefits of the Joint Venture

Agreement, *inter alia*, by ordering,

a. Defendant Yates restore to MacNeill a full and complete copy of the

C#.NET Permit Tracker source and operating code in all and any  editions made

on and/or after February 2008, comprising all error corrections, improvements

made in its operation, and additions of new functions and/or, operations, with

encryption removed, and/or encryption keys provided for full operation,

distribution and registration.

b. Defendant Yates account for all gains, profits, and advantages, derived

from, and all damage to, the C#.NET Permit Tracker.

c.  DefendantYates to pay to MacNeill compensatory, consequential, and

punitive, damages for injuries, caused by Yates' breach fraud and other

wrongful conduct.

d. Defendant Yates to pay to plaintiff the costs of this action and

reasonable attorney's fees are allowed to plaintiff MacNeill.

e. Defendant Yates to pay to MacNeill, an amount to compensate MacNeill

for all C#.NET Permit Tracker Maintenance costs for error corrections and

modifications and/or additions  necessary or desirable to improve the

performance or operation or appearance of the C#.NET Permit Tracker and/or

for adaption of the C#.NET Permit Tracker,  to changes in market conditions

and/or technology, and which shall be for the commercial life of C#.NET Permit

Tracker.

## COUNT VII – INJUNCTIVE RELIEF SOUGHT

80.  Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40, the

same as if set forth herein in their entirety.

81. The C#.NET Permit Tracker is a valuable, unique, and original product

incorporating original and creative works of authorship, with a potential for

profit to its joint owners.

82. The C#.NET Permit Tracker incorporates, as integral and inseparable parts,

MacNeill's copyrighted 1996 Permit Tracker and the MacNeill trade secret know

how in the Permit Tracker market, namely a market  for a computer data

processing system, for storing, and reporting, information about acquiring and

maintaining  permits, permit status, permit events, permit reminders,

associated personnel, other related permits, and for entry of comments or

action items.

83. Yates' exclusive dominion and control over the C#.NET Permit Tracker source code is adverse to MacNeill's joint ownership rights therein, is in violation of the confidence and trust reposed in, and accepted by, Yates, and after repeated demands by MacNeill for the C#.NET Permit Tracker source code, is an ouster and eviction of MacNeill from his rights titles and interests in the C#.NET Permit Tracker.

84. The C#.NET Permit Tracker is a software product requiring continuing maintenance by revisions and new versions for error corrections, and by modifications or additions,  to adapt it to changes in technology and the relevant market (hereinafter "Maintenance").

85. Any failure to provide Maintenance is an abuse and waste of the C#.NET Permit Tracker, resulting in continuing obsolescence, relative to changing technology and changing market conditions or needs.

86. Yates has caused waste and abuse to the C#.NET Permit Tracker and MacNeill will be unable to prevent Yates from further acts of waste, or abuse, to the C#.NET Permit Tracker, by Yates' neglect, or Yates' refusal to provide

Maintenance or by Yates' willful destruction of all or parts of, the C#.NET Permit Tracker source code.

87. A substantial likelihood of success on the merits of this action follows from the words, deeds, and actions, of MacNeill and Yates, in, or from, their joint venture agreement and their joint production, and existence, of an operable C#.NET Permit Tracker.

88.  While Yates maintains his sole and exclusive dominion over the C#.NET Permit Tracker source code, MacNeill will be unable to work in its further development, will be unable to prevent abuse by Yates by damage to the C#.NET Permit Tracker source code, will be unable to market the C#.NET Permit Tracker, or prevent waste by Yates decision or acts holding the C#.NET Permit Tracker from the market, or marketing it ineptly and to less than its full potential, or by Yates' failure to provide Maintenance.

89. While Yates maintains his sole and exclusive dominion over the C#.NET Permit Tracker source code, MacNeill's Permit Tracker business based on the MacNeill 1996 Permit Tracker, will be supplanted and destroyed, by the new improved C#.NET Permit Tracker.

90. The threatened injury to MacNeill, by denial of a copy of the C#.NET Permit

Tracker source code outweighs whatever damage the proposed injunction may

cause Yates.

91. There is no public interest that would suffer injury by an injunction. The

uses and benefits of the C#.NET Permit Tracker could be available to the public

from MacNeill and Yates.

92. MacNeill has no adequate remedy and law, to compensate MacNeill

for Yates refusal to provide to MacNeill  the C#.NET Permit Tracker source

code other than by an order of immediate transfer to MacNeill of a full

and complete copy of the C#.NET Permit Tracker source and operating

code, in all editions and/or versions, made since March 2008, comprising

all error corrections, improvements made in its operation, and/or

additions of new functions and/or operations, with encryption removed,

or encryption keys provided for full operation, distribution and

registration.


WHEREFORE, Plaintiff MacNeill requests the Court grant a preliminary and

permanent injunction, ordering an immediate transfer to MacNeill of a

full and complete copy of the C#.NET Permit Tracker source and

operating code, in all and any editions and versions, made since March

2008, comprising all error corrections, improvements made in its

operation, and/or additions of new functions, operations, with encryption

removed, or encryption keys provided for full operation, distribution and

registration.

## ALTERNATIVE COUNT VIII – COPYRIGHT INFRINGEMENT

93. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40, the

same as if set forth herein in their entirety.

94. MacNeill is the sole and exclusive owner of the U.S. Copyright Registration

for the 1996 Permit Tracker windows version [Registration: TX 6-888-851].

95. Yates wrote the C#.NET Permit Tracker source code by copying copyright

protected features of the 1996 Permit Tracker windows version and by adding

to the 1996 Permit Tracker windows version, MacNeill's proprietary

modifications, which were made according to MacNeill's direction and control.

96. The C#.NET Permit Tracker written by Yates, is  a  work copied from the

1996 Permit Tracker Windows version, is a work incorporating MacNeill's

proprietary modifications, as a work for hire, and is a work  based on, and

derived from  the MacNeill owned copyrighted 1996 Permit Tracker windows

version [Registration: TX 6-888-851].  (Hereinafter "Derivative Work")

97. Yates has violated MacNeill's exclusive rights in the Derivative Work,  by

reproducing, modifying, distributing copies, performing or using, C#.NET

Permit Tracker.


WHEREFORE, Plaintiff MacNeill requests the Court,

1. Grant to MacNeill preliminary and final injunctions on such terms as it may

seem reasonable to prevent or restrain infringement of MacNeill's copyright in

the Derivative Work, as set forth in Paragraph 95.

2. Order Defendant Yates to account for all gains, profits, and advantages,

derived from, and all damage to, the C#.NET Permit Tracker.

3. Order Defendant Yates to pay to plaintiff the costs of this action and

reasonable attorney's fees be allowed to plaintiff MacNeill.

4. Order Defendant Yates to pay to MacNeill compensatory, consequential, and

punitive, damages for injuries, caused by Yates' fraud and other wrongful

conduct.

5.  On such terms as this Court may deem reasonable, order the impounding,

and transfer to Plaintiff MacNeill, of all copies of the C#.NET Permit Tracker,

made in violation of MacNeill's exclusive rights.

6. Award to MacNeill his actual damages and any additional profits of Yates, or

statutory damages, under 17 U.S.C. §504.

7. Award to MacNeill all other relief, as the Court may find just and proper.

### ALTERNATIVE COUNT IX  BREACH OF CONTRACT IMPLIED IN LAW

98. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40, the

same as if set forth herein in their entirety.

99. MacNeill conferred benefits on Yates, comprising, *inter alia*,

a. under MacNeill's Copyright TX 6–888–851 to the 1996 Permit Tracker, the

limited and restricted right to copy the 1996 Permit Tracker, in the C#.NET

programming  language;

b. under MacNeill's trade secret rights, a limited and restricted right to use

MacNeill's know how of the Permit Tracker market for a computer data

processing system, for storing, and reporting, information about acquiring and

maintaining permits, permit status, permit events, permit reminders, associated

personnel, other related permits, and for entry of comments or action items to

adapt the C#.NET Permit Tracker to the Permit Tracker market.

 (Hereinafter "MacNeill's Conferred Benefits" or "MacNeill Benefits")

100. The C#.NET Permit Tracker property is based on and derived from,

MacNeill's Conferred benefits.

101. Yates' voluntarily accepted and retained the MacNeill Benefits with

knowledge acquired from, and under the circumstances of, the words, actions,

and deeds, of MacNeill and Yates, of MacNeill's resulting rights, titles and

interests,  in the C#.NET Permit Tracker, as value and compensation for

MacNeill's Conferred Benefits.

102. Yates, in derogation of MacNeill's rights, as stated in Paragraph 101,  took

exclusive dominion, possession, and control, of the C#.NET Permit Tracker,

evicting and depriving MacNeill from all and any of his rights, titles,  and

interests in the tangible and intangible C#.NET Permit Tracker property.

103. The circumstances of Yates' taking the C#.NET Permit Tracker property, as

stated in Paragraph 102, above, are such that it would be inequitable for Yates

to retain the MacNeill Benefits without restoring to MacNeill his exclusive rights,

titles and interests, in the C#.NET Permit Tracker, subject to the extent of any

equitable rights of Yates to, or in, the C#.NET Permit Tracker.


WHEREFORE, Plaintiff MacNeill, requests this Court, order Defendant Yates

restore to the Plaintiff MacNeill the fair value of MacNeill's Conferred Benefits,

by ordering,

1. All and any of Defendant Yates' rights titles, and interests in the C#.NET

Permit Tracker are void and terminated.

2. Defendant Yates immediately transfer to MacNeill's possession, custody and

control, full and complete copies of the C#.NET Permit Tracker source and

operating code in all editions made on, and/or after March  2008,  and all error

corrections,  modifications, and/or additions  necessary or desirable to improve

the performance and/or operation or appearance, of the C#.NET Permit Tracker

and/or for adaption of the C#.NET Permit Tracker to changes in market

conditions and/or technology, and which shall be for the commercial life of

C#.NET Permit Tracker.

3. Order Defendant Yates to pay to plaintiff the costs of this action and

reasonable attorney's fees be allowed to plaintiff MacNeill.

## ALTERNATIVE COUNT X – UNJUST ENRICHMENT

104. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40

and 99 to 102, the same as if repeated herein in its entirety.

105. The circumstances of Yates' taking the C#.NET Permit Tracker property, as

stated in Paragraph 102, above, are such that Defendant Yates has been

unjustly enriched and it would be inequitable for Yates to retain the MacNeill

Benefits without restoring to MacNeill his exclusive rights, titles and interests,

in the C#.NET Permit Tracker, subject to the extent of any equitable rights of

Yates to, or in, the C#.NET Permit Tracker.


WHEREFORE, Plaintiff MacNeill, requests this Court, order Defendant Yates

restore to the Plaintiff MacNeill the fair value of MacNeill's Conferred Benefits,

by ordering,

1. All and any of Defendant Yates' rights titles, and interests in the C#.NET

Permit Tracker are void and terminated.

2. Defendant Yates immediately transfer to MacNeill's possession, custody and

control, full and complete copies of the C#.NET Permit Tracker source and

operating code in all editions made on, and/or after March  2008,  and all error

corrections,  modifications, and/or additions  necessary or desirable to improve

the performance and/or operation or appearance, of the C#.NET Permit Tracker

and/or for adaption of the C#.NET Permit Tracker to changes in market

conditions and/or technology, and which shall be for the commercial life of

C#.NET Permit Tracker.

3. Order Defendant Yates to pay to plaintiff the costs of this action and

reasonable attorney's fees be allowed to plaintiff MacNeill.


COUNT XI

BREACH OF FIDUCIARY DUTY OWED BY JAMES A. YATES AS MAJORITY MEMBER
OF ENCODED SOLUTIONS, LLC TO JOHN B. MACNEILL, AS MINORITY MEMBER


106.  Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40,

the same as if repeated herein in its entirety.


107.  MacNeill and Yates formed the limited liability company Encoded

Solutions, LLC, in April 2007.

108. On June 8th, 2007, MacNeill and Yates signed the Operating Agreement Of

Encoded Solutions, LLC (hereinafter "Operating Agreement"), as members.

109.  Under the June 8th, 2007 Operating Agreement, the Percentage Interest of

Yates was 51% and the Percentage Interest of MacNeill was 49%.

110.  MacNeill, as the 49% minority interest in a closely held limited liability

company, was dependent on Yates, as the controlling majority member, to act

fairly and in good faith, toward Mac Neill.

111.  Yates, assured MacNeill, he (MacNeill) need not worry about Yates' 51%

ownership interest, that he (Yates) will work toward both of our (Yates' and

MacNeill's ) best interests.

112.  The majority – minority LLC relationship of MacNeill and Yates, was of

trust and confidence and Yates owed a fiduciary duty to John B. MacNeill (see

Paragraphs 110, 111, above)

113. On March 22nd, 2008, MacNeill received by U.S. certified mail, sent from,

Amy Van Fossen. P.A. (predecessor by name change to successor Amy B.

Jackson, P.A.), a Notice Of Special Meeting Of Members Of Encoded Solutions,

LLC (hereinafter "Notice"), signed "James A. Yates,"


114. The Notice (see 112, above), advised a "special meeting of shareholders of

Encoded Solutions LLC, is scheduled on March 26th at 11:A.M, to consider and

vote on *inter alia*,

    a. Discuss the Breach of Contract by John B. MacNeill and the

    Removal of John B. MacNeill as a member of Encoded Solutions,

    LLC, per Operating Agreement Section 4,3, Section 6.1 and 8.4,

    (see Notice, Para. 3),

    b. Removal of John B. MacNeill from all bank accounts of Encoded

    Solutions, LLC (see Notice, Para. 5), and

    c. Removal of John B. MacNeill as Treasurer and the Election of

    James A. Yates as Treasurer of Encoded Solutions, LLC, per

    Operating Agreement Section 32.(c) (see Notice, Para. 6).

115. On March 28th, 2008, John B. MacNeill received by U.S. certified mail, sent

from, Amy B. Van Fossen, P.A. (predecessor by name change to successor Amy

B. Jackson, P.A.), Minutes Of Special Meeting Of Shareholders Of Encoded

Solutions, LLC , signed by James A. Yates , Secretary an President (hereinafter

"Minutes"), advising *inter alia*,

a. Resolved that James A. Yates with a 51% majority membership interest

shall have the ability to manage the LLC,

b. Resolved, that John B. MacNeill shall be removed from all bank

accounts of the LLC,

c. Resolved that John B. MacNeill is to deliver to the law office of Amy B.

Van Fossen, P.A. by close of business Monday March 31, 2008, any and

all of the following items owned by Encoded solutions, LLC that are in his

possession, mail and receipts addressed to Encoded Solutions, LLLC,

checking book of Encoded Solutions, LLC, bank card for the Bank of

America account of Encoded Solutions, LLC, and post office box key for

Box 33244, Indialantic, FL.

d. Resolved that John B. MacNeill has breached the Operating Agreement

of Encoded Solutions LLC and that both the LLC and James A. Yates

personally have been harmed by this breach and be entitled to injunctive

relief, and

e. Resolved, that because John B. MacNeill has breached the Operating

Agreement of Encoded solutions, LLC an offer shall be made that the

assets of the LLC be distributed to the members in accordance to the

contract attached (to the Minutes, in lieu of initiating legal action.


116. The contract (see Para. 115, e, above) entitled Contract For Sale And

Purchase Of Membership Interest In Encoded Solutions, LLC (hereinafter

"Contract"), in summary, provided,

a. John B. MacNeill as seller,  to sell to James A. Yates as buyer, all of John

B. MacNeill's 49 % membership interest (see Contract I.)),

b. John B. MacNeill to receive the "John B. MacNeill  Non–Capital

Contributions," as listed in the Operating Agreement (see Contract II.),

c. Buyer James A. Yates release all claims against Seller John B. MacNeill

for breach of the Operating Agreement  (see Contract V. (b)) and

d. Seller John B. MacNeill release all claims of ownership to the "Non

Capital Contributions,"   contributed  by James A. Yates in the Operating

Agreement," identified as "[T]he new 'Permit Tracker' permit tracking

software product consisting of all source code and al associated

intellectual property rights,"  (see Contract V. (c))


117. The Non-Capital Contributions of James A, Yates (see Paragraph 116 d,

above), as stated in the Operating Agreement (See Paragraph 108, above), are

the "new Permit Tracker permit tracking software product , consisting of source

code and all associated intellectual property rights,"  (also known as the C#.Net

permit Tracker).


118. Yates' assertion of breach, made in the Minutes (see paragraph 115, d).

above), was made with actual knowledge of its falsity, or  made without

knowledge either of its truth or falsity , or under circumstances in which Yates

ought to have known, if he did not know, of its falsity.


119. The Yates' false assertion of breach (see Paragraph 118, above),

　　　a. was made with the threat of a groundless lawsuit,

b. was intentional, and

c. was made for the purpose of intimidating MacNeill by threat of a

groundless lawsuit and into accepting the Contract (see Paragarph 116,

to remove John B. MacNeill from Encoded Solutions, LLC, and to take from

MacNeill, all MacNeill's rights, title and interest in "[T]he new 'Permit

Tracker' permit tracking software product consisting of all source code

and all associated intellectual property rights." (see Paragraph 116 (d),

above), also known as the "new Permit Tracker permit tracking software

product and as the  C#.NET Permit Tracker (see Paragraph 117, above).


120.  Yates' assertions that MacNeill breached the Operating Agreement (see

Paragraph 119, above),

a. had no legitimate business purpose,

b. was false,

c. constituted an abuse of discretion, and

d. was a breach and violation of Yates fiduciary duty,  as the majority

controlling member of Encoded Solutions, LLC, to MacNeill, as the minority

member.

121. Following Yates false assertions (see Paragraph 120, above, in breach or

violation of his fiduciary duty (see Paragraph 120 d, above), Yates did take for

himself , and withhold from MacNeill, all of MacNeill's rights, titles and

interests, in "[T]he new 'Permit Tracker' permit tracking software product

consisting of all source code and all associated intellectual property rights,"

(see Paragraph 116 d, above), also known as the new Permit Tracker permit

tracking software product or the C#.NET Permit Tracker, (see Paragraph 119 c,

above), in reckless disregard of the truth of MacNeill's joint ownership thereto,

in derogation of MacNeill's, rights, titles, and interests, in the C#.NET Permit

Tracker, and in violation of Yates' obligation as fiduciary entrusted with the

MacNeill and Yates jointly owned C#.NET Permit Tracker, tangible and

intangible property.

122. The breach by Yates, of his fiduciary duty to MacNeill, (see Paragraph 120,

121, above), was the proximate cause of MacNeill's damages.

WHEREFORE, Plaintiff MacNeill requests the Court,

1.  Create a constructive trust for the new 'Permit Tracker' permit tracking software product consisting of all source code and all associated intellectual property rights,  (also known as the C#.NET Permit Tracker ),  and transfer to MacNeill's possession, custody and control, a full and complete copy of the C#.NET Permit Tracker source and operating code in all and any editions made on and/or after February 2008, comprising all error corrections, improvements made in its operation, and additions of new functions and/or operations, with encryption removed, and/or encryption keys provided for full operation, distribution and registration.

2. Order Defendant Yates to account for all gains, profits, and advantages, derived from, and all damage to, the C#.NET Permit Tracker.

3. Order Defendant Yates to pay to MacNeill compensatory, consequential, and punitive, damages for injuries, caused by Yates' fraud and other wrongful conduct.

4. Order Defendant Yates to pay to plaintiff the costs of this action and reasonable attorney's fees are allowed to plaintiff MacNeill.


COUNT XII

CONSPIRACY BY JAMES A. YATES AND AMY B. JACKSON (SUCCESSOR BY NAME

CHANGE TO AMY B. VAN FOSSEN), TO BREACH OR VIOLATE THE FIDUCIARY

DUTY OWED BY JAMES A. YATES AS MAJORITY MEMBER OF ENCODED

SOLUTIONS, LLC TO JOHN B. MACNEIL , AS MINORITY MEMBER


123. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40

and 107 to 122, the same as if repeated herein in its entirety.


124.  Amy B. Jackson (successor by name change to Amy B. Van Fossen),

registered agent for Encoded Solutions, LLC, did agree and conspire with James

A. Yates to intentionally make false assertions of MacNeill's  breach (see

Paragraph 119, 120, above),  for the purpose of removing John B. MacNeill from

Encoded Solutions, LLC, and taking  all MacNeill's rights, title and interest in

"[T]he new 'Permit Tracker' permit tracking software product consisting of all

source code and all associated intellectual property rights." (see Paragraph 116

(d), above) also known as the new Permit Tracker permit tracking software

product and as the  C#.NET Permit Tracker (see Paragraph 119 c, above)..


125. As part of the conspiracy (see Paragraph 124, above), a meeting of

Encoded Solutions, LLC was held and Minutes of the  Encoded Solutions, LLC

meeting, was sent to MacNeill, falsely accusing MacNeill of Breach of the

Operating Agreement  threatening a law suit for the alleged Breach and offering

a release from the law suit conditioned on MacNeill releasing his rights, titles

and interest in the new Permit Tracker permit tracking software product

consisting of all source code and all associated intellectual property rights, also

known as the C#.NET Permit Tracker (see Paragraph 119 c, above)


126. Following these false assertions (see Paragraph 125, above), Yates did take

for himself all of the rights, titles and interests of the C#.NET Permit Tracker ,

withholding from MacNeill, the C#.NET Permit Tracker source code, in reckless

disregard of the truth of MacNeill's joint ownership, in derogation of MacNeill's,

rights, titles, and interests, in the C#.NET Permit Tracker, and in violation of

Yates' obligation as fiduciary entrusted with the MacNeill and Yates jointly

owned C#.NET Permit Tracker tangible and intangible property.


127. MacNeill did suffer damage as a result of the acts performed through the

conspiracy (see Paragraphs 124 to 127, above).

WHEREFORE, Plaintiff MacNeill request the court find MacNeill suffered

damages, in an appropriate and just amount.


COUNT XIII.

ATTORNEY MALPRACTICE BY AMY B. JACKSON, ESQ. (SUCCESSOR BY NAME

CHANGE TO AMY B. VAN FOSSEN. ESQ.), CAUSING INJURY TO FORMER CLEINT

JOHN B. MACNEILL

128. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40

and 124 to 127, the same as if repeated herein in its entirety.


129. In or about the end of March 2007, Amy B. Jackson, Esq. was retained by

John B. MacNeill and James A. Yates, as their counsel in the formation of their

new limited liability company, named Encoded Solutions, LLC.


131. Amy B. Jackson, Esq., did provide legal services to Encoded Solutions, LLC,

and to Yates and MacNeill,  all of whom were Amy B. Jackson, Esq. clients.


132. Amy B. Jackson, Esq., legally represented Encoded Solutions, LLC, and the

individual interests of MacNeill and Yates, in Encoded Solutions, LLC, from

about the end of March 2007 to April 2nd, 2008, except for MacNeill whose

representation by Amy B. Jackson, Esq., apparently ended by notice given in a

letter dated March 11th, 2008, from Amy B. Van Fossen, P.A. (predecessor by

name change to successor Amy B. Jackson), to John B. Mac Neill.


133. The March 11th, 2008, letter from Amy B. Van Fossen, P.A. (predecessor by

name change to successor Amy B. Jackson, Esq.),  (see Paragraph 132, above),

advised MacNeill:  Amy B. Van Fossen  "will no longer be able to represent you

in any matters pertaining to Encoded Solutions, LLC, or your copyright

interests."


134. In that period,  March 2007 to April 2nd, 2008 (see Paragraphs 132,

above), and on, or about, March 27th, 2008, Encoded Solutions, LLC , by and

through James A. Yates, Secretary and President,  while legally represented by

Amy B. Jackson, Esq., and while Amy B. Jackson, Esq., was legally representing

James A. Yates, made a  threat of a groundless lawsuit, and an offer of

Settlement (See Contract, Paragraph 116, above) materially adverse to MacNeill,

and made for the purpose removing MacNeill from Encoded Solutions, LLC, and

to take from MacNeill, for the sole and exclusive benefit of James A. Yates, as

the sole resulting member of Encoded Solutions, LLC, all of MacNeill's rights,

title and interest in the new Permit Tracker permit tracking software product

consisting of all source code and all associated intellectual property rights (also

known as the C#.NET Permit Tracker) see Paragraphs 125, 126, above).


134. Amy B. Jackson, Esq., legally represented Encoded Solutions, LLC and

legally represented James A. Yates' interests in Encoded Solutions, LLC  (see

Paragraph 131 to 133,  above), in the same or the  substantially related matter,

namely that  of the members Yates' and MacNeill's interests and participation in

Encoded Solutions, LLC, and in which  James A, Yates interests in Encoded

Solutions, LLC were materially adverse to the interests of former client MacNeill

in Encoded Solutions, LLC,  and was without any consent by or of MacNeill


ALTERNATE COUNT XIV

ATTORNEY MALPRACTICE BY AMY B. JACKSON, ESQ. (SUCCESSOR BY NAME

CHANGE TO AMY B. VAN FOSSEN, ESQ.), TO CLIENT JOHN B. MACNEILL

135. Plaintiff repeats and incorporates each allegation in Paragraphs 1 to 40 and 124 to 127, the same as if repeated herein in its entirety.

136. In or about the end of March 2007, Amy B. Jackson, Esq. (successor by name change to Amy B. Van Fossen, Esq.), was retained by John B. MacNeill and James A. Yates, as their counsel in the formation of their new limited liability company, named Encoded Solutions, LLC.

137. Amy B. Jackson, Esq., continuously did provide legal representation to Encoded Solutions, LLC, and to Yates and MacNeill, as Amy B. Jackson's, Esq., clients, in connection with the interests of Encoded Solutions, LLC and in connection with the respective interests of MacNeill and Yates, as members of the closely held Encoded Solutions, LLC, from about the end of March 2007 to April 2nd , 2008.

138. In that continuous period, March 2007 to April 2nd, 2008 (see Paragraph 137, above), and in the included period March 22nd 2008 to March 27th 2008, Encoded Solutions, LLC , by and through James A. Yates, Secretary and

President,  while  represented by Amy B.  Jackson, Esq.,  in a way materially

adverse to MacNeill, made a  threat of a groundless lawsuit, and an offer of

Settlement (See Contract, Paragraph 116, above) for the purpose removing John

B. MacNeill from Encoded Solutions, LLC, and to take from MacNeill, for the sole

and exclusive benefit of James A. Yates, as the sole resulting member of

Encoded Solutions, LLC, all of MacNeill's rights, title and interest in the new

Permit Tracker permit tracking software product consisting of all source code

and all associated intellectual property rights (also known as the C#.NET Permit

Tracker) see Paragraphs 125, 126, above).


139. Amy B. Jackson's, Esq. (successor by name change to Amy B. Van Van

Fossen, Esq.), legal representation of Encoded Solutions, LLC and James A.

Yates' interests in Encoded Solutions, LLC  (see Paragraph 138, above), was

materially adverse to the interests of Amy B. Jackson's Esq. client MacNeill in

Encoded Solutions, LLC,  and was without any consent by or of MacNeill.


WHEREFORE; an award of damages is requested in a just and appropriate

amount.



_____

/joelirosenblatt/

Joel I. Rosenblatt

Attorney for Plaintiff John B. MacNeill

Florida Bar No. 0476031

445 11th Ave.

Indialantic, Florida 32903

Telephone (321) 727 7626

Email: jirosenblatt@earthlink.net

Certificate of Service

I certify a copy of this <u>Second Amended Complaint For Declaratory Judgment And Injunctive Relief</u>, was filed on the 24th Day of November 2009, with Clerk of Court through the CM/ECF electronic filing system which will send electronic notices to Ms. Leslie J. Castaldi, 476 Highway A!A, Suite 8A, Satellite Beach, FL 32937, Mr. G. Phillip J. Zies, 202 N. Harbor City Blvd., Suite 101, Melbourne, FL 32935, Mr. Mark R. Malek, 202 N. Harbor City Blvd., Suite 101, Melbourne, FL 32935, Ms. Amy B. Jackson, 476 Highway A1A, Suite 8A, Satellite Beach, FL 32937.

_____

/joelirosenblatt/

Joel I. Rosenblatt

Attorney for Plaintiff John B. MacNeill

Florida Bar No. 0476031

445 11th Ave.

Indialantic, Florida 32903

Telephone (321) 727 7626

Email: jirosenblatt@earthlink.net