# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOHN B. MACNEILL,**

        **Plaintiff,**

-vs-                                                  Case No. 6:09-cv-706-Orl-31DAB

**JAMES A. YATES and AMY B. VAN FOSSEN, n/k/a AMY B. JACKSON,**

        **Defendants.**

_____

# ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 120) filed by Defendant James Yates ("Yates"), the response (Doc. 137) filed by the Plaintiff, John MacNeill ("MacNeill"), and Yates' reply (Doc. 205).

**I.    Background**

MacNeill owns a piece of software called the "Permit Tracker." MacNeill contends that he co-authored the original, DOS version of the software (henceforth, the "1987 Permit Tracker"), and later helped develop a Windows version (the "1996 Permit Tracker"). As its name implies, the Permit Tracker software is used to manage information about the process of acquiring and maintaining permits, such as those required for construction projects.

Yates is a computer programmer. Beginning in 2004, he and MacNeill discussed the idea of improving the Permit Tracker by rewriting it in a more modern programming language, C#.NET. For ease of reference, the C#.NET version of the Permit Tracker software will be

referred to as the "CPT". MacNeill contends that he and Yates formed a joint venture in September 2004 to develop and market the CPT. Yates denies forming a joint venture. He contends that he wrote source code for the CPT from late 2004 through late 2006 or early 2007, when he and MacNeill began to discuss formalizing their business relationship.

In April 2007, the pair had Defendant Amy Jackson ("Jackson"), an attorney, file the articles of incorporation for a new entity, Encoded Solutions, LLC, of which Yates and MacNeill were the only members and officers. Pursuant to the operating agreement for Encoded Solutions (henceforth, the Operating Agreement), which the parties signed in June 2007, Yates received a 51 percent ownership interest in the LLC, with MacNeill receiving the other 49 percent. The Operating Agreement obligated both men to make capital contributions to the LLC of approximately $3,500. It also required them to make non-capital contributions. Yates was required to contribute the source code for the CPT, and all associated intellectual property rights. MacNeill was required to contribute the existing Permit Tracker software, including its source code and intellectual property rights; the US Trademark "Permit Tracker" and all materials supporting ownership and protection of the trademark; and all customer and marketing information relating to the then-existing versions of the Permit Tracker software.

After a period of cooperation, the relationship broke down. Yates contends that MacNeill had violated the Operating Agreement by continuing to sell the 1996 Permit Tracker on his personal website and by failing to produce the materials establishing ownership of the "Permit Tracker" Trademark. In March 2008, Yates fired MacNeill from his position as treasurer of Encoded Solutions. In August 2008, Yates dissolved the LLC. MacNeill filed the instant suit, asserting by way of numerous legal theories that he is entitled to ownership, or at least co-

ownership, of the CPT. Yates denies that MacNeill is entitled to any rights in the CPT, and has responded with a number of counterclaims seeking, *inter alia*, declaratory judgments to that effect. Yates now seeks summary judgment as to MacNeill's remaining claims and his own counterclaims.

## II. Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving

party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.   Analysis**

The Court previously (Doc. 111) granted in part Yates' motion for judgment on the pleadings as to MacNeill's Second Amended Complaint (Doc. 55), leaving MacNeill with the following claims against Yates: declaratory judgment (Count I), fraudulent inducement (Count VI), breach of contract (Count VII), breach of contract implied by law (Count IX), unjust enrichment (Count X), and breach of fiduciary duty as majority LLC member (Count XI).[1] Yates also has asserted four counterclaims against MacNeill, three of which seek declaratory judgments regarding the parties' intellectual property rights, and one of which asserts a claim for fraudulent inducement. By way of the instant motion, Yates seeks summary judgment as to all of the remaining claims, and his own counterclaims.

**A. Declaratory Judgment (Count I)**

In Count I of his Second Amended Complaint (Doc. 55), MacNeill originally sought to have the Court declare that he and Yates formed a joint venture to develop and market the CPT, that the CPT is a joint work, and that he and Yates jointly own all of the rights to the CPT and its source code. (Doc. 55 at 14-15). However, in his response, MacNeill abandons his request for a declaration that he and Yates formed a joint venture. (Doc. 137 at 1). Thus, only the latter two points remain at issue.

---

[1] MacNeill also raised a claim for breach of fiduciary duty as a joint venturer (Count V) but he now concedes that Yates is entitled to summary judgment as to that claim. (Doc. 137-1 at 3).

Under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (henceforth, the "Act"), a "joint work" is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Joint authors each possess an independent right to use or license the copyrighted work, subject only to a duty to account to the other author(s) for any profits earned on the work. *Cmty. for Creative Non-Violence v. Reid*, 846 F.2d 1485, 1498 (D.C.Cir. 1988), *aff'd*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The Act does not explicitly define the term "joint author". The legislative history to the Act[2] fleshes out the term somewhat, stating that

> [A] work is "joint" if the authors collaborated with each other, or if each of the authors prepared his or her contribution with the knowledge and intention that it would be merged with the contributions of other authors as "inseparable or interdependent parts of a unitary whole." *The touchstone here is the intention, at the time the writing is done, that the parts be absorbed or combined into an integrated unit.*

House Report at 120; Senate Report at 103 (emphasis added). Thus, according to the legislative history, there are two ways for an author to create a joint work (or, stated differently, to become a joint author): by collaborating with another author, or by preparing a work with the knowledge and intent that it be merged, at some point, with the work of another author. Those courts that have considered the issue have held that authors who collaborate must also do so with the requisite intent to combine their efforts – although it is hard to imagine collaborators who would not possess such an intent. *See, e.g., Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068-69 (7th Cir. 1994).

---

[2]H.R.Rep. No. 1476, 94th Cong., 2d Sess. 120 (1976) ("House Report "), reprinted in 1976 U.S.C.C.A.N. 5659, 5736; S.Rep. No. 473, 94th Cong., 2d Sess. 103-04 (1975) (" Senate Report").

MacNeill contends that he gave Yates the 1996 Permit Tracker to mimic and combine into the CPT, and that this contribution makes him a joint author of the CPT.[3] This assertion fails, as a matter of law. MacNeill admits, as he must, that the 1996 Permit Tracker was not prepared with the intention that it be combined with the CPT source code that would be written by Yates ten years later. MacNeill attempts to get around this problem by pointing to his own testimony that, at the time the source code for the CPT was being written, he intended that the 1996 Permit Tracker be combined with it. MacNeill argues that this satisfies the "touchstone" requirement that the proper intention exist "at the time the writing is done," because it existed when Yates was writing the putative joint work. But MacNeill's focus on the so-called touchstone ignores the broader point. The requirement as described in the legislative history is that each author *prepare* his or her contribution with the requisite intention that it be combined with the work of another author. The 1996 Permit Tracker could not have been prepared with the requisite intention, even if MacNeill subsequently developed such an intention.

MacNeill also attempts to rely on the initial portion of the legislative history quoted above, which defines a joint work as one in which the authors collaborated. *See id.* But, at least in regard to the 1996 Permit Tracker, there was no collaboration between Yates and MacNeill, as it was finished long before Yates started working on the CPT.

Moreover, MacNeill admits that, though listed as an author, he did not write the 1996 Permit Tracker. Rather, he asserts that he made a contribution to the 1996 Permit Tracker that made it a joint work, and him a joint author. Specifically, he argues that his contribution to the

---

[3] Yates denies having any intention to combine his work with that of MacNeill, but for purposes of resolving this motion, the Court will assume that such intent existed at the pertinent time.

1996 Permit Tracker was the 1987 Permit Tracker, to which he held the rights. Similar to his argument in regard to the CPT, MacNeill asserts that he permitted the programmer of the 1996 Permit Tracker to mimic the 1987 Permit Tracker. But "[t]here has to be *some* original expression contributed by anyone who claims to be a co-author." *Gaiman v. McFarlane*, 360 F.3d 644, 658 (7th Cir. 2004). *Accord*, *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 4 S.Ct. 279, (1884) (stating various formulations of the prerequisites for authorship, ranging from "originating, making, producing, as the master mind, the thing which is to be protected" to "giv[ing] effect to the idea, fancy, or imagination."). Permitting someone to mimic something that you own, without more, demonstrates no originality or imagination, and is not enough to qualify one as an "author" for purposes of the copyright laws.

MacNeill also asserts that he is a joint author because he made numerous suggestions to Yates regarding capabilities and functions that should be included in the CPT. (Doc. 137 at 9-10). He does not discuss or even identify any of these contributions in his response, instead referring the Court to his separate affidavit. This improper attempt to exceed the page limitations imposed on response briefs warrants granting of this portion of Yates' motion. Despite this, the Court has reviewed the cited portions of MacNeill's affidavit. After doing so, the Court finds that the affidavit does not support the notion that MacNeill was a joint author.

The rule is that to qualify as a joint author, one's contribution must be independently copyrightable. *Gaiman*, 360 F.3d at 658. *See also M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1492-93 (11th Cir. 1990). It is well settled that ideas alone are not copyrightable. "In no case does copyright protection for an original work of authorship extend to any idea, . . . concept, . . . regardless of the form in which it is described, explained, illustrated, or embodied in

such work." 17 U.S.C. § 102(b). Rather, copyright protection subsists "in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated." 17 U.S.C. § 102(a). MacNeill did not fix his ideas for improving the CPT in any tangible medium of expression. Instead, according to his affidavit, he simply told Yates to do such things as "change the design of the add/edit permit dialogue box, by placing a new data field 'Application Number' at the top of the permit dialogue box screen" (Doc. 138-3 at 1) and to "include the ability for Image Files to be linked to Projects" (Doc. 138-3 at 4). MacNeill does not argue that his ideas were independently copyrightable, or that any exception to the requirement of independent copyrightability applies in this case.

There is no genuine issue of material fact as to whether this the CPT was a joint work or whether MacNeill was a joint author. Accordingly, Yates is entitled to summary judgment on this count.

**B. Fraudulent Inducement (Count VI)**

MacNeill asserts that Yates fraudulently induced him to sign the Operating Agreement by making the following statement to him on May 1, 2007: "Not one more line of code will be written until you sign this agreement. Don't worry. I will work toward both of our best interests."

Under Florida law, a fraudulent inducement claim requires a plaintiff to show

1. a false statement regarding a material fact;
2. knowledge by the person making the statement that the representation is false;
3. intent by the person making the statement to induce action by the plaintiff; and
4. the plaintiff's reliance on the statement, to the plaintiff's detriment.

*Florida Software Systems, Inc. v. Columbia/HCA Healthcare Corp.*, 46 F.Supp.2d 1276, 1286 (M.D.Fla. 1999).

MacNeill contends that the latter part of the May 1 statement, about Yates working toward both their best interests, is a false statement of a material fact. However, vague statements are insufficient, as a matter of law, to establish fraudulent inducement. *Simon v. The Celebration Company*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004). A statement that one party will work toward the best interests of both parties is too vague to establish fraudulent inducement. In addition, MacNeill has not produced any evidence that the statement was false at the time it was made. He also has failed to produce evidence of damages he suffered as a result of signing the operating agreement. MacNeill's only assertion is that the damages in this count relate to "potential lost sales" of the CPT. (Doc. 137-1 at 7). But no potential sales were lost because MacNeill signed the Operating Agreement; if at all, they were lost (or, at least, MacNeill's ability to receive part of the profits from them was lost) when Yates removed MacNeill from Encoded Solutions and then dissolved it. Fraud cannot form the basis for recovery of damages unless the damages directly arise from the fraud and are causally connected to the fraud. *The Celebration Company* at 833. Thus, for at least three different reasons, MacNeill cannot prevail as to his fraudulent inducement claim, and Yates is entitled to summary judgment on this count.

### C. Breach of Contract (Count VII)

Yates argues that he is entitled to summary judgment as to this count because MacNeill cannot meet the "heavy and difficult" burden, *Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957), of establishing the existence of a joint venture agreement in the absence of a written contract to that effect between the parties. MacNeill responds that Count V, which is titled "Breach of

Contract," is actually asserting a claim that Yates breached the Operating Agreement, rather than the joint venture agreement. MacNeill bases this assertion primarily on the fact that the breach asserted in the count is alleged to have occurred in March 2008, well after the execution of the Operating Agreement. (Indeed, MacNeill alleged that the breach included, in part, a false allegation that he had breached the Operating Agreement.)

But the plain language of the count itself does not permit such an interpretation. Count VII contains four numbered paragraphs, the first of which simply reincorporates previous factual allegations. (Doc. 55 at 27). The second begins with the words "MacNeill and Yates engaged in a joint venture agreement" and explains the purposes of the alleged agreement. (Doc. 55 at 27). The next numbered paragraph describes how MacNeill and Yates worked together from the time the joint venture agreement was allegedly formed (September 2004) through 2007. (Doc. 55 at 28). The fourth paragraph begins with the words "Yates breached their joint venture agreement, on or about March 28th, 2008," then describes how he allegedly did so. (Doc. 55 at 28). The fifth and final numbered paragraph begins with the words "Yates confirmed his breach of the joint venture agreement, on or about June 20th, 2008," and again goes on to describe how he did so. (Doc. 55 at 29). And in the first two lines of the *ad damnum* clause in this count, MacNeill requests a declaration that "Defendant Yates breached the MacNeill Yates Joint Venture" and seeks a restoration to him of "all of the benefits of the Joint Venture Agreement". (Doc. 55 at 29-30). By contrast, there is absolutely nothing in the count that suggests that the allegedly breached agreement was the Operating Agreement, and no effort to reclaim the benefits of that agreement. The only possible interpretation is that this count asserted a claim for breach of the joint venture agreement. Because MacNeill has failed to demonstrate the existence of a genuine issue of

material fact as to whether such an agreement existed, Yates is entitled to summary judgment as to this count.

**D. Breach of Contract Implied by Law (Count IX) and Unjust Enrichment (Count X)**

Though given different titles, the causes of action asserted in these two counts are identical in substance and will be addressed together. In both counts, MacNeill asserts that he conferred certain benefits on Yates, and that it is unjust for him to retain those benefits without paying for them. MacNeill contends that he conferred on Yates (1) the right to copy the 1996 Permit Tracker and (2) the right to use MacNeill's knowledge about the market for permit tracking services so as to adapt the CPT to that market. MacNeill also asserts that the CPT is "based on and derived from" these benefits.

Under Florida law, to establish a claim for recovery under a contract implied by law or for unjust enrichment, the plaintiff must establish that he conferred a benefit on the defendant, who has knowledge of the benefit, that the defendant accepted and retained the conferred benefit, and that, under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. *See Lewis v. Seneff*, 654 F.Supp.2d 1349, 1369 (M.D.Fla. 2009); *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997).

Yates points out that MacNeill did not write any of the CPT source code, that MacNeill has always had possession of the 1996 Permit Tracker, and that it is undisputed that Yates never had access to the 1996 Permit Tracker source code. Yates also asserts that he spent approximately 8,500 hours developing and testing the CPT, has lost approximately $800,000 (including his time investment) as a result of MacNeill's conduct, and has not been paid for his time or received any

revenue from sales of the CPT. None of these things, however, show that the items MacNeill conferred on Yates provided no benefit or otherwise undermine MacNeill's quasi-contract/unjust enrichment claims.

Yates also alleges that there is no evidence that MacNeill's knowhow provided any benefit in the development of the CPT or the operation of Encoded Solutions. In his response to the instant motion, MacNeill states that he provided Yates with "the concept of the [CPT]," "the copyrighted screen displays from the 1996 Permit Tracker, which Yates mimicked and reproduced in [the CPT]," and customer lists, as well as "copyrightable contributions not included in the 1996 Permit Tracker which were incorporated into [the CPT]" and market knowhow. (Doc. 137-1 at 10). Although he filed a reply to MacNeill's response, Yates did not address these assertions. At least arguably, the items provided by MacNeill conferred a benefit as to Yates' development of the CPT. Accordingly, MacNeill has failed demonstrate his entitlement to summary judgment as to Counts IX and X.

### E. Breach of Fiduciary Duty (Count XI)

In Count XI, MacNeill asserts that Yates, as majority member of Encoded Solutions, had a fiduciary duty toward him, which he breached by falsely accusing him of breaching the Operating Agreement. MacNeill argues that Yates did so in order to remove MacNeill from the LLC and take control of the rights to the CPT. For his part, Yates contends that he removed MacNeill from Encoded Solutions because MacNeill had, in fact, breached the Operating Agreement by among other things continuing to sell the 1996 Permit Tracker after he was supposed to have contributed that program and all the associated rights to the LLC. MacNeill does not contest the allegation that he sold the 1996 Permit Tracker after he was supposed to have contributed it to Encoded

Solutions or argue that it was not a breach of the Operating Agreement. Accordingly, there is no genuine issue of material fact as to whether Yates' accusation was false, and therefore a breach of his fiduciary duty, and Yates is entitled to summary judgment as to Count XI.

**F. Yates' Counterclaims**

Yates also requests summary judgment as to the four counterclaims he has asserted against MacNeill. Three of the counterclaims relate to the copyright dispute over the CPT. The first seeks a declaration that Yates is the sole owner of the source code for the CPT, that the CPT does not infringe upon the 1996 Permit Tracker, that the CPT is not a derivative work of the 1996 Permit Tracker, and that Yates is entitled to recover his costs and fees for prevailing on a copyright action. However, although the Court has determined above that MacNeill is not a joint author of the CPT, that alone is not enough to eliminate the possibility that MacNeill could have some ownership rights in the CPT, and Yates has offered nothing else. In addition, Yates previously sought judgment on the pleadings as to Count VIII of MacNeill's Second Amended Complaint, in which MacNeill asserted that the CPT infringed his copyright on the 1996 Permit Tracker. MacNeill did not oppose entry of judgment on that count. (Doc. 111 at 5). Accordingly, there is no longer a live controversy as to the CPT's possible infringement of the 1996 Permit Tracker, as required for this Court to enter a declaratory judgment pursuant to the Federal Declaratory Judgment Statute, 28 U.S.C. § 2201. Similarly, the allegation that the CPT was a derivative work was contained in Count VIII and is therefore no longer the object of a live controversy. And Yates' right to seek recovery of his fees and costs in this matter is set forth in the Copyright Act, 17 U.S.C. § 505, so there is simply no need for a declaratory judgment on that score.

The second counterclaim relates to an admission by MacNeill in his complaint that he gave Yates permission to create a derivative work from the 1996 Permit Tracker. Based on this, admission, Yates seeks a declaration that he is the sole owner of the CPT source code and the related intellectual property rights, that the CPT does not infringe upon the 1996 Permit Tracker, and that Yates is entitled to his costs and fees for prevailing on a copyright action. Again, however, Yates has not established that he is the sole owner, the only infringement claim is now moot, and there is no need for a separate declaration regarding recovery of fees. In addition, the only viable contention in this counterclaim – that Yates is the sole owner of the CPT source code and the related intellectual property rights – is redundant of the only viable contention in the first counterclaim. Accordingly, the Court will strike this counterclaim *sua sponte*.

In his third counterclaim, Yates seeks a declaration that he is, at a minimum, a co-author of the CPT; that a co-author cannot sue another co-author for copyright infringement; that if MacNeill were to be found to be a co-author of the CPT, he could not sue Yates for copyright infringement; and that Yates is entitled to his costs and fees for prevailing on a copyright action. All of these issues have also been rendered moot or are unnecessary, and the Court will also strike this counterclaim.

In his final counterclaim, Yates contends that he was fraudulently induced to create the LLC and to enter into the Operating Agreement by MacNeill's false representations that he owned and would contribute the United States trademark "Permit Tracker" and the copyright and other intellectual property rights for the 1996 Permit Tracker. Yates claims that he suffered the following damages: the value of his time to research and develop the software, his initial capital contribution to the LLC, and unspecified "other costs of software development." (Doc. 58 at 30-

31). Yates' argument on this point in his motion is, at best, perfunctory. For his part, MacNeill contends that he possessed a common-law trademark in the term "Permit Tracker," and thus there is a disputed issue of fact as to whether his representation about the trademark was false. In addition, Yates does not point to any evidence supporting his claim for damages, or attempt to show how, but for the alleged misrepresentations, he would not have suffered them. Yates has not established an entitlement to summary judgment on this counterclaim.

**IV.    Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 120) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Counts I, VI, VII and XI and **DENIED** as to Counts IX and X of MacNeill's Second Amended Complaint. The motion is **DENIED** as to all four of the counterclaims asserted by Yates. In addition, the Court hereby **STRIKES** the second and third counterclaims asserted by Yates, as well as the portions of the first counterclaim in which Yates seeks a declaratory judgment that the CPT does not infringe upon the 1996 Permit Tracker, that the CPT is not a derivative work of the 1996 Permit Tracker, and that Yates is entitled to recover his costs and fees for prevailing on a copyright action.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 10, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party